UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-23257-CIV-JORDAN/MCALILEY

IN THE MATTER OF

The Complaint of
JOLLY ROGER CRUISES & TOURS, S.A.,
as bare boat charterer and owner *pro hac vice* of the
Motor Vessel, GRAZIAFELICE a/k/a GRAZIA
FELICE, its engines, tackle, appurtenances, etc.,
in a case for Exoneration from or Limitation of Liability
_____/

ALISON STARKEY,

    Plaintiff,

v.

JOLLY ROGER CRUISES & TOURS, S.A.,

    Defendant.
_____/

## ORDER GRANTING MOTIONS FOR PROTECTIVE ORDER

Pending before the Court are Plaintiff's Motion for Protective Order and Motion to Quash Subpoena Duces Tecum [DE 45] and Plaintiff's Motion for Protective Order regarding Jolly Roger's Proposed Psychiatric Examination [DE 51]. I have reviewed the parties' written submissions, the record, and applicable law. For the reasons set forth below, Plaintiff's Motions are granted.

### I.  BACKGROUND

This action arises from injuries Alison Starkey ("Starkey") sustained aboard a

snorkeling boat owned by Jolly Roger Cruises & Tours ("Jolly Roger"). Jolly Roger initiated this litigation by filing a Verified Complaint for Exoneration from or Limitation of Liability pursuant to 46 U.S.C. §§ 30501 *et seq*. [DE 1]. Starkey filed an Answer, Affirmative Defenses, and Claim in response. [DE 21]. Starkey stated the following allegations in her Claim.

On March 3, 2010, Starkey went on a snorkeling excursion on a boat owned by Jolly Roger. [*See* DE 21 at ¶ 8]. The crew members instructed Starkey and others that they were to enter the water by jumping over the side of the boat, rather than from the stern. [*See id*. at ¶ 11]. Starkey alleges that the boat was overcrowded, and that the crew hurried the passengers to get into the water, as limited snorkeling time was available. [*See id*. at ¶ 13]. When it was her turn to exit the boat, Starkey placed her hand on the metal rail and jumped overboard. [*See id*. at ¶ 15]. Starkey's right ring finger and ring became caught on the railing, and she hung suspended in the air for several seconds, after which her finger became amputated, and she fell into the water. [*See id*. at ¶¶ 16-17].

After she was helped back into the boat, Starkey and other passengers requested that she receive medical aid, but the boat was not equipped with a first-aid kit. [*See id*. at ¶¶ 19-20]. Starkey was provided a bag of ice and a wet t-shirt from crew members. [*See id*.]. Another person, believed to be a passenger, retrieved Starkey's finger from the water. [*See id*. at ¶ 22]. Starkey claims she was in severe pain and shock, but rather than flagging down nearby vessels, the crew waited 30 minutes before contacting another one of their boats,

which later picked up Starkey and transported her to shore for medical treatment. [*See id.* at ¶¶ 23-24].

Starkey claims that as a result of the incident, she suffered significant injuries, including the amputation of her right ring finger, pain and suffering, medical expenses, economic losses, and other injuries and damages. [*See id* at ¶ 25]. Specifically, Starkey claims that her damages include:

> permanent personal injuries, resulting pain and suffering, including several surgeries, medical treatment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical expenses, significant out of pocket expenses and economic losses, lost past earnings, lost ability to earn wages in the future, loss of future earning capacity, and/or aggravation of a previously existing condition. These losses are either permanent or continuing in nature and Plaintiff will suffer the losses in the future and for the rest of her life.

[*Id.* at ¶ 32; *see also* ¶ 38, 44, 53].

In her Rule 26 Initial Disclosures, Starkey wrote this about her damages: "Further, Plaintiff endured and continues to endure pain and suffering following her injuries as well as emotional distress and mental anguish caused by the subject incident and her subsequent treatment, injuries, and loss of her finger on her dominant hand." [*See* DE 26, p. 5, ¶ C]. As part of her lengthy answers to Interrogatories that asked her to describe her damages, Starkey wrote the following:

> It is very upsetting that I can't wear a ring(s) on that finger. The loss of my rings, which were special memories for events in my life, was an enormous loss as well.

> I experience cramping, swelling, pain, stiffness, strange sensations, including feeling my rings, among other problems when I use my hand.

3

>It is nearly impossible to identify each such injury and loss that I have sustained; however, in general terms, I now compensate due to my lost finger and find it very challenging to perform many tasks involving my hand. It is also very frustrating since I am in a profession that requires the frequent use of latex gloves and my hands as a PPE. It is more difficult to perform my job. I also suffer emotionally and frequently tuck in the extra finger of the glove to avoid embarrassment, which is just one of the many psychological reminders of my devastating injury.
>
>I am reluctant to shake hands out of a concern for having it squeezed too hard. I also am asked regularly about what happened, in which case I relive the nightmare. My children are also affected and say things, which are devastating to me, suggesting their mother is not whole or making similar comments.
>
> * * *
>
>The severe scaring [sic] on my upper arm makes me uncomfortable and I usually wear items with sleeves. I may seek plastic surgery in the future to repair it.
>
> * * *
>
>Further, I endure pain and suffering following my injuries as well as emotional distress and mental anguish caused by the subject incident and my subsequent treatment, injuries, and loss of finger on my dominant hand.

[DE 50, pp. 15-16].

Jolly Roger issued a subpoena duces tecum to Starkey's therapist, Jane Patterson, MSW. [*See* DE 45-1]. Jolly Roger has also noticed a mental examination of Starkey, to be performed by a psychiatrist, pursuant to Rule 35 of the Federal Rules of Civil Procedure. [*See* DE 51, p. 15]. Starkey now moves for a protective order to prevent both the subpoena *duces tecum* and the mental examination.[1]

---

[1] Jolly Roger moved for leave to file a surreply based on newly discovered evidence [DE 57]. The newly discovered evidence consists of two references, that Jolly Roger found in Starkey's

## II. ANALYSIS

### A.     The Therapist's records

Starkey raises a number of grounds upon which the subpoena duces tecum issued to Jane Patterson, MSW, should be quashed:  lack of relevance, failure to provide adequate notice, and a defect for failure to issue the subpoena from the proper district.  The issues of adequate notice and the issuance from an improper district can be easily cured, and indeed, Jolly Roger has since issued a new subpoena, with proper notice, from the proper district.  The Court will therefore address Starkey's relevance argument.

Starkey states that Patterson is a social worker, from whom Starkey has sought counseling regarding problems with her marriage, and her relationship with her mother. Starkey claims that these are highly personal records that she does not want disclosed. Starkey further claims that Patterson's records of their sessions are not relevant, nor are they reasonably calculated to lead to the discovery of admissible evidence, as this is a personal injury case, for which she seeks damages based on the loss of her finger.  She adamantly states that she is not alleging that her marriage or her relationship with her mother – the basis for her counseling sessions with Patterson – have been affected by the loss of her finger, and she states she will not call Patterson as a witness in her case-in-chief.

---

medical records, to her having met with a counselor for "grief management" over the loss of her finger [*see* DE 57 at p. 2].  The Court grants Jolly Roger leave to file the surreply.  However, I conclude that this additional information does not justify the discovery Jolly Roger seeks.

Jolly Roger maintains that Patterson's records may shed light on the extent to which Starkey had emotional issues that predate her accident and that impacted her daily enjoyment of life, as opposed to distress caused by the loss of her finger. Jolly Roger argues that this justifies the production of Ms. Patterson's records. [DE 50 at p. 3].

In support of its position, Jolly Roger cites the broad discovery provisions of the Federal Rules, which provide, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Rule further provides that "All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." *Id*. The limitations of subsection (b)(2)(C) provide that the court must limit discovery if it is unreasonably cumulative, unduly burdensome, or can be obtained from other sources. Fed. R. Civ. P. 26(b)(2)(C). Jolly Roger claims that it cannot obtain the information in Patterson's records through any other sources, nor is the information sought cumulative or duplicative.

I agree that Jolly Roger cannot obtain the information from Patterson's records through any other source, and that the records are not cumulative or duplicative. However, I find the records to be of such a highly personal nature that they fall within another subsection of Rule 26, which provides that a court may limit discovery to protect a party from annoyance, embarrassment, oppression, or undue burden. Fed. R. Civ. P. 26(c)(1). Moreover, I find that psychological counseling sessions related to personal family

6

relationships have little, if anything, to do with distress associated with the later loss of Ms. Starkey's finger. The potential relevance is extremely tenuous, and the sensitive nature of the records is plain. Accordingly, I conclude, in accordance with Rule 26, that the records should not be produced.

Jolly Roger also cites two cases in support of its position that the records should be produced: *Anderson v. City of New York*, No. CV20054422(ERL)(MDG). 2006 WL 1134117 (E.D.N.Y. April 28, 2006), and *Cuoco v. U.S. Bureau of Prisons*, No. 98 Civ. 9009 (WHP), 2003 WL 1618530 *3 (S.D.N.Y. March 27, 2003). In both of these cases, courts ordered disclosure of the plaintiff's mental health records. Both cases, however, ordered disclosure of the records on the ground that the plaintiff had waived the psychotherapist/patient privilege, and they are therefore inapposite to Starkey's relevance argument.[2] Given the nature of the claims and damages sought by Starkey, I find that Patterson's records are not reasonably calculated to lead to the discovery of admissible evidence, and their production would lead to unnecessary embarrassment and invasion of Starkey's privacy. Accordingly, the subpoena duces tecum is hereby quashed.[3]

---

[2] Notably, Starkey did not invoked the psychotherapist/privilege as a reason to prevent the production of the records. Had she done so, however, this Court would have found the records privileged pursuant to the Supreme Court's decision in *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996) (holding that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.").

[3] My earlier order required that, in the event the records were produced before this matter was resolved, the records were to remain unopened and sealed [DE 47]. If the records have already been produced, Defendants are instructed to return them to Ms. Patterson.

**B.     Rule 35 Mental Examination**

Rule 35 provides, in relevant part:

(a) Order for an Examination.

> (1) In General.  The court where the action is pending may order a party whose mental or physical condition – including blood group – is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.
>
> (2) Motion and Notice; Contents of the Order. The order:
>
>> (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and
>>
>> (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Fed. R. Civ. P. 35.

Jolly Roger asserts that Starkey has placed her mental condition in controversy, and that good cause exists for the psychiatric examination.  Starkey counters that she has not placed her mental condition in controversy, because she does not claim any psychiatric or psychological injuries, but only claims the physical injury of the amputation of her finger. [DE 51 at p. 2].  She claims that her emotional distress claims are typical of those associated with an injury of the type she suffered.  [*Id*.].

Courts considering this issue have repeatedly held that where a plaintiff makes a "garden variety" claim of emotional distress, without more, that plaintiff has not placed her

mental condition at issue. In *Ortiz-Carballo v. Ellspermann*, No. 5:08-cv-165-Oc-10GRJ, 2009 U.S. Dist. LEXIS 37536 (M.D. Fla. Apr. 7, 2009), the court explained:

> The majority of federal courts that have addressed the issue have held that a party does not place his mental condition in controversy merely by requesting damages for mental anguish or "garden variety" emotional distress. In order to place a party's mental condition in controversy the party must allege a specific mental or psychiatric disorder or intend to offer expert testimony to support their claim of emotional distress.

*Id*. at *4-5.[4] *See also Nathai v. Fla. Detroit Diesel-Allison, Inc.*, 268 F.R.D. 398, 400 (M.D. Fla. 2010) ("[i]t is true, a plaintiff does not put his or her mental condition in controversy simply by seeking damages based on emotional distress"); *Ali v. Wang Laboratories, Inc.*, 162 F.R.D. 165, 167-68 (M.D. Fla. 1995) ("[The] plaintiff's 'mental condition' within the meaning of Rule 35 is not necessarily placed in controversy merely because plaintiff seeks recovery for 'emotional distress.' A person with no 'mental condition' may still suffer emotional distress which is compensable."); *Robinson v. Jacksonville Shipyards*, 118 F.R.D. 525, 531 (M.D. Fla. 1988) ("Plaintiff does not place her mental condition in controversy by alleging that her psychological well being . . . is seriously affected by defendant's

---

[4] In *Ortiz-Carballo*, the court considered the issue of waiver of the psychotherapist/patient privilege rather than a Rule 35 mental examination. However, courts have repeatedly held that the standard for a Rule 35 mental examination is analogous to the standard for whether the psychotherapist/patient privilege has been waived. *See, e.g., Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 557 (N.D. Ga. 2001) ("determining whether the plaintiff has placed her mental condition at issue so as to waive the privilege is analogous to, and should be generally consistent with, the analysis conducted when a Rule 35(a) examination is requested"); *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 226 (D.N.J. 2000) (considering a Rule 35 analysis analogous to a psychotherapist/patient waiver analysis); *St. John v. Napolitano*, Case No. 10-00216 (BAH), 2011 U.S. Dist. LEXIS 34484 at * 21 (D.D.C. Mar. 31, 2011) (finding the factors for a Rule 35 analysis "equally applicable for analyzing whether or not an emotional distress claim is 'garden variety' in the waiver context").

behavior.").

In her interrogatory answers, Starkey makes the following claims of emotional distress:

> I also suffer emotionally and frequently tuck in the extra finger of the glove to avoid embarrassment, which is just one of the many psychological reminders of my devastating injury.
>
> I also am asked regularly about what happened, in which case I relive the nightmare.
>
> My children are also affected and say things, which are devastating to me, suggesting their mother is not whole or making similar comments.
>
> Further, I endure pain and suffering following my injuries as well as emotional distress and mental anguish caused by the subject incident and my subsequent treatment, injuries, and loss of finger on my dominant hand.

[DE 50, pp 15-16]. While Starkey's interrogatory responses go beyond the garden variety claim of "mental anguish" set forth in her Claim, she does not go so far as to allege that her accident and physical injury triggered a specific mental or psychiatric disorder. Rather, on the whole, Starkey's claims remain one of garden variety emotional distress, that is certainly susceptible of careful consideration by a jury without resort to experts. To that end, Starkey has committed to not calling Ms. Patterson as a witness in her case-in-chief. These circumstances are comparable to those in *Ortiz-Carballo*, where the court found that the plaintiff had not placed his mental state at issue because:

> Plaintiff does not allege in his Amended Complaint that Defendant's actions caused him to suffer from depression or any other psychological condition. Nor does his Amended Complaint include a claim where emotional distress is an element of the cause of action. Moreover, in his response to the instant

10

> motion, Plaintiff clarifies that he has not asserted a claim for depression and that he does not intend to rely upon the testimony of Dr. Poetter to support his claim for damages.

2009 U.S. Dist. LEXIS 37536 at *6. In keeping with the majority of courts that have addressed this issue, I conclude that Starkey has not placed her mental condition in controversy so as to subject her to an involuntary Rule 35 mental examination. Accordingly, Starkey's motion for protective order is granted.

### III. CONCLUSION

In light of the foregoing, it is ORDERED as follows:

1.  Plaintiff's Motion for Protective Order [DE 45] is GRANTED.

2.  Plaintiff's Motion for Protective Order [DE 51] is GRANTED.

3.  Petitioner's Motion for Leave to File Surreply [DE 57] is GRANTED.

DONE AND ORDERED in chambers in Miami, Florida, this 18th day of April, 2011.

*[signature]*
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc:
The Honorable Adalberto Jordan
counsel of record